**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM WEINRAUCH, | ) | CASE NO. 1:18-CV-01696 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE DONALD C. NUGENT |
| v. | ) | |
| | ) | |
| | ) | |
| THE SHERWIN-WILLIAMS | ) | <u>MEMORANDUM OPINION AND</u> |
| COMPANY, *et al.*, | ) | <u>ORDER</u> |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on Defendants' the Sherwin-Williams Company ("Sherwin-Williams") and Jerry Kozik ("Defendant Kozik") (collectively, "Defendants") Motion for Summary Judgment. (ECF #22). Plaintiff, William Weinrauch ("Plaintiff" or "Mr. Weinrauch") timely filed a Brief in Opposition (ECF #23) and Defendants filed a Reply. (ECF #28). After careful consideration of the issues and a full review of the filings and all relevant authority, Defendants' Motion for Summary Judgment is GRANTED.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff William Weinrauch brings this action against his former employer Defendants the Sherwin-Williams Company and Jerry Kozik alleging age discrimination and retaliation in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and Ohio Revised

---

[1] Except as otherwise noted, the factual summary is based solely on the undisputed facts set forth in the parties' statements of facts, the Plaintiff's Complaint, and the affidavits and other evidence filed with the Court as part of the summary judgment motion briefing. Those facts which are contested and have some support through the submitted affidavits or other evidence will be addressed in the body of the opinion and shall be construed in the light most favorable to the Plaintiff as required under the Summary Judgment standards.

Code § 4112.01 *et seq.* Plaintiff alleges Defendants discriminated and retaliated against him on the basis of age by reassigning him to a new position without managerial responsibilities only to eliminate the position in a reduction of force and terminate his employment roughly ten months later. Plaintiff further alleges Defendant Kozik "aided and abetted" Defendants efforts to discriminate and retaliate against him in violation of R.C. § 4112.02(J).

### A. Plaintiff's Employment at Sherwin-Williams

On February 23, 2015, Defendant Sherwin-Williams hired 53-year-old Plaintiff Weinrauch to the position of IT Portal Development Manager. (Compl., ECF #1, ¶ 16, 20; Weinrauch Aff., ECF #23-1, ¶ 1). Susan Zielinski ("Ms. Zielinski") hired Plaintiff and she became his direct supervisor. (Compl., ECF #1, ¶ 19). As IT Portal Development Manager, Plaintiff's primary duties included overseeing a team of approximately five other Sherwin-Williams employees within the portal development team, which then operated within a larger portal team. (Weinrauch Aff., ECF #23-1, ¶ 2). Plaintiff was tasked with retiring Defendants' current intranet application, Chameleon, and migrating its contents and information to Defendants' new system, MySherwin. (Weinrauch Aff., ECF #23-1, ¶ 3). The Corporate IT Department was headed by Defendant Jerry Kozik, who was 51-years-old at the time of Plaintiff's hiring. (Kozik Dep. 6, 22).

Approximately ten months into Plaintiff's employment, Ms. Zielinski was reassigned and Teresa Crane ("Ms. Crane") became Plaintiff's supervisor. (Compl., ECF #1, ¶ 22). Ms. Crane supervised Plaintiff for six months, at which time Heather Johnson ("Ms. Johnson") began supervising Plaintiff and his team. (Compl., ECF #1, ¶ 23-24).

### B. Plaintiff's Meeting with HR Manager Ms. Bowen-Klek

On or around September of 2016, Plaintiff began expressing dissatisfaction with his role as Portal Development Manager and his strained relationship with Ms. Johnson. Plaintiff received

contentious communications from Ms. Johnson and his repeated requests for training and career development went unanswered. On September 28, 2016, Plaintiff forwarded Human Resources Manager for the IT Department, Cynthia Bowen-Klek ("Ms. Bowen-Klek"), his most recent email exchange with Ms. Johnson and requested a meeting. (Weinrauch Aff., ECF #23-1, ¶ 5-9).

During their meeting on September 28, 2016, Plaintiff told Ms. Bowen-Klek that he felt underutilized and wanted new opportunities within the organization. (Bowen-Klek Dep. 12:10-11, 40). Plaintiff informed Ms. Bowen-Klek that Ms. Johnson treated him with disrespect, continually questioned his work, and generally failed to communicate with him. In his Affidavit and testimony, Plaintiff states he told Ms. Bowen-Klek that he believed Ms. Johnson was singling him out and treating him differently because of his age. (Compl., ECF #1, ¶ 33; Weinrauch Aff., ECF #23-1, ¶ 10). Following their meeting, Ms. Bowen-Klek prepared a note of talking points and set up a meeting with Defendant Kozik to discuss the conversation she had with Plaintiff. (Bowen-Klek Dep. 79).

Ms. Bowen-Klek contacted Ms. Johnson and advised that she should take a different approach with respect to her future communication with Plaintiff. (Bowen-Klek Dep. 63). She encouraged Ms. Johnson to facilitate more in person communication and repair the tension between the two. (*Id.*). Ms. Bowen-Klek and Defendant Kozik met and agreed he would discuss the communication issues with both Ms. Johnson and Plaintiff. (Kozik Dep. 65-66; Bowen Dep. 62).

Defendant Kozik held separate meetings with both Plaintiff and Ms. Johnson and advised them of leadership standards and the necessity for working together. (Kozik Dep. 68-70). During Plaintiff's meeting with Defendant Kozik, he repeated his concerns that he was not being challenged in his role and shared with Defendant his wish to obtain another opportunity. (Kozik

Dep. 71). Defendant encouraged Plaintiff to think about what he would like to do and on October 17, 2016, Plaintiff emailed Defendant about a business development manager role he wanted Defendants to create for him in the IT Department. (Weinrauch Dep. 139; Kozik Dep. 71, 99, 120).

### C. Plaintiff's Reassignment to an Individual Contributor Role

In December of 2016, Ms. Johnson resigned her employment with Sherwin-Williams and management decided to combine the portal team (for which Plaintiff served as supervisor) and the app team together under the management of Maneesha Arashanapalli. (Kozik Dep. 75). Defendants identified a business need for departmental reporting and tool oversight, an opening created when former portfolio analyst, Adam Garrett, left Sherwin-Williams several months prior. (Bowen-Klek Dep. 100).[2]

In January of 2017, Plaintiff began his new individual contributor role as Portfolio Manager, a position he had initially sought with Defendants in 2014 before a hiring freeze. (Weinrauch Dep. 38-40). As Portfolio Manager, Plaintiff was responsible for handling departmental reporting and Oracle Business Intelligence Enterprise Edition ("OBIEE") oversight. (Weinrauch Aff., 17; Brownsword Dep. 74). In this individual contributor role, Plaintiff was no longer responsible for managing other employees, but did maintain his same grade level, pay and benefits. (Weinrauch Dep. 185). Plaintiff began reporting to Senior IT Manager, Megan Brownsword ("Ms. Brownsword"), age 35 at the time of Plaintiff's transfer (Weinrauch Aff. ¶ 14).

Beginning in January of 2017, Plaintiff made multiple attempts via email to inform Ms. Brownsword of his desire to "contribute" to the role. In February and March of 2017, Plaintiff

---

[2] The parties agree Plaintiff was transferred to an "individual contributor role" with OBIEE reporting duties. Based on the evidence in the record, the Court adopts Defendants' "Portfolio Manager" title for purposes of clarity and not as determinative on the substance of any claim.

submitted proposals to Ms. Brownsword and requested to join a Salesforce project. Ms. Brownsword failed to respond to some of Plaintiff's communications or advised she would follow up, which she never did. Plaintiff continued to contact Ms. Brownsword through the spring and summer of 2017, communications which Ms. Brownsword either ignored or denied Plaintiff's requests. (Weinrauch Aff. ¶ 18-19).

### D. Plaintiff's Position is Eliminated in Defendants' Reduction in Force

On June 1, 2017, Sherwin-Williams acquired The Valspar Corporation in an $11.3B merger. (Kozik Dep. 80). Around August of 2017, Defendant met with Jeff Gerber, Valspar's Vice President of IT, regarding an opportunity for a business relationship manager position as the acquisition of Valspar had been completed. (Weinrauch Aff. at ¶ 21). Mr. Gerber informed Defendant Kozik of Plaintiff's interest in the position, the same type of opportunity Plaintiff asked Defendant to create for him in October of 2016. (Kozik Dep. 99-100).

The merger between Sherwin-Williams and Valspar left Defendants with a number of redundancies and overlapping expense, and as a result, every operating unit in Sherwin-Williams received aggressive "value capture" budgets holding them to significant cost reduction requirements. (Kozik Dep. 97). Sherwin-Williams cut thousands of employees worldwide. Defendant Kozik first tried meeting his value capture budget by reducing expenses on things like software, vendor contracts, hardware, and projects. However, Defendant was unable to meet his budget and thus had to reduce headcount. (Kozik Depo. 97).

Defendant could not meet his headcount and thus had to begin eliminating positions. (Kozik Dep. 96-98). In the headcount reduction process, Defendants' Corporate IT Department examined areas for redundancy and work that the Department could ask the operating divisions to do themselves. (Bowen Dep. 118-19; Kozik Dep. 97, 107, 109). Ultimately, Defendants cut

twenty-five employees within its IT Department, and had to separate six members of his team, who ranged in age from 28-62. (Kozik Dep. 108-109; Def. Response to Interrog. No. 23).

On September 26, 2017, Ms. Bowen-Klek and Defendant Kozik met with Plaintiff and informed him that his position was being eliminated in a reduction in force following Defendants' acquisition of Valspar. (ECF #1, ¶ 64-65). Defendant told Plaintiff he decided his team would no longer perform the facilitation and administrative work for reporting or the OBIEE oversight. (Bowen-Klek Dep. 119; 122-23). Defendants presented Plaintiff with separation and severance documents. (ECF #1, ¶ 66). On December 15, 2017, Plaintiff filed his EEOC Charge of Discrimination and the EEOC issued a Right to Sue Letter on June 15, 2018 for his Charge of Discrimination. (ECF #1, ¶ 11-12). On July 23, 2018, Plaintiff initiated this action against Defendants Sherwin-Williams and Jerry Kozik for age discrimination, retaliation, and aiding and abetting. (ECF #1).

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806 (6ᵗʰ Cir. 2011). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires

consideration of the applicable evidentiary standards. Although evidence may be presented in support of a summary judgment motion, the moving party need not support its motion with affidavits or similar materials that negate the non-mover's claim(s) if they can otherwise show an absence of evidence supporting the non-mover's case. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 788 (6th Cir. 2000). The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted); *see also, Arendale v. City of Memphis*, 519 F.3d 587 (6th Cir. 2008). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence

that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III.   ANALYSIS

### A.  Plaintiff's Age Discrimination Claims Fail as a Matter of Law

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge...or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Plaintiff's age discrimination claims under the ADEA and Ohio law (Counts I and III, respectively) are premised on two allegedly adverse employment actions: (1) Defendants' decision to transfer Plaintiff to the position of Portfolio Manager and (2) Defendants' decision to eliminate Plaintiff's position in a reduction in force. (Compl. ECF #1 at ¶ 83-93; 103-113).[3]

---

[3] As both the federal and state statutes employ the same evidentiary standards regarding age discrimination, the claims may be analyzed together. *Perry v. Lincoln Elec. Co.*, 285 F.3d 456, 469 (6th Cir. 2002).

A plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence. *See Martin v. Toledo Cardiology Consultants, Inc.,* 548 F.3d 405, 410 (6th Cir. 2008). Whether a plaintiff proffers direct or indirect evidence, the burden of persuasion remains on an ADEA plaintiff to show "that age was the 'but-for' cause of the[] employer's adverse action." *Gross v. FBL Fin. Srvs., Inc.,* 577 U.S. 167, 168 (2009); *see also Geiger v. Tower Automotive,* 579 F.3d 614, 620 (6th Cir. 2009).

In the absence of direct evidence, as is the case here, a plaintiff may establish a *prima facie* case of discrimination by showing that he (1) was a member of a protected class (over forty years-old); (2) suffered an adverse employment action; (3) was qualified for the position held; and (4) was replaced by someone outside of the protected class, or that he was treated differently than similarly situated employees outside of the protected class. *Johnson v. Franklin Farmers Coop.,* 378 Fed. Appx. 505, 508; *see Martin,* 548 F.3d 405 at 410.

If a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decisions at issue. *McDonnell Douglas v. Green,* 411 U.S. 792, 804 (1973). Once a defendant meets this burden of production, a plaintiff must then prove defendant's reasons are a pretext for age discrimination. To withstand summary judgment, a plaintiff must come forward with evidence demonstrating that the defendant's articulated nondiscriminatory justification is not true. *Id.*; *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1082 (6th Cir. 1994). To make a submissible case on the credibility of an employer's explanation, a plaintiff is required to show by a preponderance of the evidence that: (1) the defendant's proffered reasons for the adverse employment action had no basis in fact; (2) the proffered reasons did not actually motivate the action; or (3) the reasons were insufficient to motivate the adverse action. *Manzer,* 29 F.3d at 1082.

## 1. *Prima Facie* Case

### a. Materially Adverse Employment Actions

Defendants concede that Plaintiff meets the first requirement of his *prima facie* case of age discrimination. As Mr. Weinrauch was 56 years old at the time of his termination in October 2017, he is a member of a protected class under the ADEA. They also agree that Plaintiff suffered an adverse employment action when his position was eliminated in a reduction force. However, Defendants' dispute Plaintiff's allegation that he also suffered an adverse employment action when he was transferred to the role of Portfolio Manager, a position with the same salary and benefits.

An adverse employment action "is a materially adverse change in the terms and conditions of [a plaintiff's] employment." *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004) (en banc). Plaintiff argues he suffered an adverse employment action as his transfer was a "demotion" to a "less-distinguished" role with "menial" tasks and no direct reports. He contends that the loss of his "managerial duties" to a role responsible for "OBIEE oversight," "all while reporting to a new supervisor who was 20 years younger than him" objectively shows his transfer is actionable conduct.

Defendant contends that Plaintiff cannot establish his transfer was a materially adverse change with respect to the terms and conditions of his employment. The Supreme Court has stated that reassignment of duties is not automatically actionable as an adverse employment action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006). Whether a reassignment is materially adverse depends on the circumstances of a particular case as judged from the perspective a reasonable person in the plaintiff's position. *Id.* at 71.

To be actionable, a reassignment must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Kocsis*, 97 F.3d at 886 (quoting *Crady v. Libery Nat'l Bank*

& *Trust Co.*, 993 F.2d 132, 136 (7ᵗʰ Cir. 1993). "Reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions." *Id.* at 885. However, the Sixth Circuit has found that a reassignment not involving any diminution of pay or work hours may still be an adverse employment action if the conditions would nevertheless be "objectively intolerable to a reasonable person, thereby amounting to a 'constructive discharge.'" *Strouss v. Mich. Dept. of Corr.*, 250 F.3d 336, 342 (6ᵗʰ Cir. 2001); *see also Keeton v. Flying J., Inc.* 429 F.3d 259, 265 (6ᵗʰ Cir. 2005). A constructive discharge exists if "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6ᵗʰ Cir. 1982).

To establish constructive discharge, Plaintiff must prove that Defendant: (1) "deliberately created intolerable working conditions, as perceived by a reasonable person, and (2) did so with the intention of forcing the employee to quit." *Logan v. Denny's Inc.*, 259 F.3d 558, 568-69 (6ᵗʰ Cir. 2001) (citations omitted). To determine if there has been a constructive discharge, then, "both the employer's intent and the employee's objective feelings must be examined." *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6ᵗʰ Cir. 1999).

In *Logan*, the Sixth Circuit identified relevant factors the Court should consider in making a constructive discharge determination: (1) demotion; (2) salary reduction; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment or humiliation by the employer calculated to encourage the employee to resign; or (7) offers of early retirement or continued employment on less favorable terms. *Logan*, 259 F.3d at 569.

In support of his position, Plaintiff submits an affidavit in which he states Defendants "removed his managerial duties, removed his portal development duties, and put him into an

individual contributor role without any job description or title." (Weinrauch Aff. at ¶ 13-14). At the very surface, he contends, this conduct demonstrates he suffered a "significant change in responsibilities" and a "less distinguished title." Further, Plaintiff emphasizes that his transfer included "reassignment to menial or degrading work" as well as "reassignment to work under a younger supervisor."

While the record does show Mr. Weinrauch's transfer resulted in a change in responsibilities, *i.e.*, the removal of his managerial duties and elimination of direct reports, this alone does not constitute adverse employment action given the other circumstances present. First, following his transfer, Plaintiff continued to enjoy the same six-figure salary, benefits, hours and work location. Second, there is nothing in the record beyond Plaintiff's own opinion that his transfer was in fact a "demotion" to a "less distinguished title." While Ms. Brownsword provided testimony that Plaintiff would be responsible for "OBIEE oversight" there is no evidence that the position lacked prestige or that it was considered a step down from Plaintiff's former role. Plaintiff's "subjective impressions as to the desirability of one position over another are not relevant" in determining whether the employee suffered an adverse employment action. *Momah v. Dominguez*, 239 F. App'x 114, 123 (6th Cir. 2007) (*see, e.g. White v. Burlington N. & Sana Fe*, 364 F. 3d 789, 797 (6th Cir. 2004) (en banc) ("...a bruised ego is not enough to constitute an adverse employment action.").

Second, Plaintiff omits from his Brief relevant factors that contributed to his transfer in the first place. Plaintiff testified that he felt underutilized, sought to create a new role or in the alternative, requested that he be transferred. He expressed interest in positions with job duties and responsibilities mirroring those of the Portfolio Manager role for which he now complains. Once reassigned, he enjoyed the same salary and benefits as his previous position. Thus, Plaintiff's

position that his transfer would be considered "objectively intolerable to a reasonable person" is unpersuasive. While "a transfer involving loss of prestige or an objectively demeaning change of working conditions...can amount to a constructive discharge," Plaintiff presents no evidence to support a finding that a reasonable person would be compelled to resign under these circumstances. *See Darnell v. Campbell Cty. Fiscal Court*, 731 F. Supp. 1309, 1313; *see also Bruhwiler v. University of Tennessee*, 859 F.2d 419, 421 (6th Cir. 1988). ("A constructive discharge must be based on objective criteria that would create intolerable conditions that a reasonable person could not be expected to bear." *Yates v. Avco Corp.*, 819 F.2d 630, 636-37).

Absent any "unusual circumstances," which Plaintiff fails to prove, "a transfer at no loss of title, pay, or benefits does not amount to a constructive discharge or adverse employment action." *Darnell*, 731 F. Supp. 1309 at 1313 (citing *Spring*, 865 F.2d at 886). Accordingly, Plaintiff's claim of age discrimination for his transfer fails as a matter of law.

### b. **Plaintiff Fails to Prove the Fourth Prong of His *Prima Facie* Case of Age Discrimination**

### i. **Reduction in Force**

With respect to his termination, Plaintiff satisfies the first three requirements of his *prima facie* case: he is over the age of 40, was qualified to perform the role of Portfolio Manager and suffered an adverse employment action when his position was eliminated in a reduction of force. The parties dispute whether Plaintiff satisfies the fourth requirement of his *prima facie* case and whether the Court should apply a reduction in force analysis. Plaintiff contends Defendants should not be awarded the heightened evidentiary burden of a reduction in force analysis because "Weinrauch's termination was not part of a legitimate RIF and Defendants' own conduct in

October 2017 destroys the legitimacy of any such argument now." (Pl. Br., ECF #23 at 19).[4] The

Court in *Barnes* explained that determining whether a discharged employee is "replaced" is the

key to deciding if the company has engaged in a valid reduction in force:

> A work force reduction situation occurs when business considerations cause
> an employer to eliminate one or more positions within the company. An
> employee is not eliminated as part of a work force reduction when he or she
> is replaced after his or her discharge. However, a person is not replaced when
> another employee is assigned to perform the plaintiff's duties in addition to
> other duties, or when the work is redistributed among existing employees
> already performing related work. A person is only replaced when another
> employee is hired or reassigned to perform the plaintiff's duties.

*Barnes v. GenCorp.*, 896 F.2d 1457, 1465 (6th Cir. 1990).

Where a plaintiff's termination results from an employer's alleged reduction in force, an

"ADEA plaintiff must satisfy the heightened burden applicable to reduction in force cases to

establish a *prima facie* case of age discrimination." *Groneck v. Wesco Distrib.*, 2005 U.S. App.

---

[4] In his Brief in Opposition, Plaintiff argues his position was not eliminated in a legitimate reduction in force, a point he believes Defendants acquiesce via their own conduct. Specifically, Plaintiff argues that Defendants should not get the benefit of a reduction in force heightened burden of proof because the severance agreement Defendants offered him did not contain information required by the Older Workers Benefit Protection Act ("OWBPA"). Pl. Br., ECF # 23 at 13). The Court disagrees. Plaintiff never signed the agreement and Defendants do not seek to enforce it. Courts have held that a failure to meet OWBPA's requirements does not create a separate cause of action under OWBPA and thus is not a violation of the ADEA. *Whitehead v. Okla. Gas & Elec. Co.*, 187 F.3d 1184, 1192 (10th Cir. 1999). In *Whitehead*, the court held that the "OWBPA simply determines whether an employee has, as a matter of law, waived the right to bring a separate and distinct ADEA claim. The OWBPA does not, by itself, determine in the first instance whether age discrimination has occurred." *Id.; see also Williams v. General Motors Corp.*, 901 F. Supp. 252 (E.D. Mich. 1995). Plaintiff argues that a "release can have no effect on [a plaintiff's] ADEA claim unless it complies with the OWBPA." *Oubre v. Entergy Operations*, 522 U.S. 422 (1998) (Pl. Br., ECF # 23 at 14). However, Plaintiff's reliance on *Oubre* and the OWBPA is misapplied as Defendants are not seeking to enforce, interpret, or apply the release, which Plaintiff never signed. Accordingly, Plaintiff's contention that he was not included in the reduction of force because the release lacked the requisite OWBPA information is without merit. Accordingly, the Court applies a reduction in force to this matter.

LEXIS 2100, at *3 (6th Cir. 2005). In work force reduction scenarios, "the most common legitimate reasons" for the discharge are indeed the work force reduction. *Barnes*, 896 F.2d at 1265.

By satisfying the other elements of a *McDonnell Douglas* case, a plaintiff has not presented "any evidence indicating that the work force reductions are not the reasons for the discharge and there does not make out a prima facie case absent direct, circumstantial, or statistical evidence tending to indicate the employer singled out the plaintiff for discharge for impermissible reasons." *Id.*; citing *LaGrant v. Gulf and Western Mfg. Co.*, 748 F.2d 1087, 1090 (6th Cir. 1984) ("[the] mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a *prima facie* case of age discrimination."). "The purpose of the additional evidence requirement is to ensure, in reduction of force cases, that the plaintiff has presented evidence to show that there is a chance the reduction in force is not the reason for the termination." *Asmo v. Keane, Inc.*, 471 F.3d 588, 593 (6th Cir. 2006).

The Sixth Circuit opined that it does not believed the heighted standard "creates an undue hardship" for age discrimination plaintiffs terminated in a work force reduction because "if the plaintiff was truly singled out for discharge because of age he or she should be able to develop enough evidence...to establish a prima facie case." *Barnes*, at 1465-66. (noting, for example, that Plaintiff could show employer made statements indicative or discriminatory motive or that he possessed superior qualifications). "The guiding principle is that the evidence but be sufficient probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age. *Id.*

Here, Defendants contend Plaintiff was terminated as part of a valid reduction in force to meet budgetary requirements and thus another individual was never hired to replace him. Plaintiff presents no evidence to refute this contention. Nothing in the record shows Sherwin-Williams

replaced him. (Weinrauch Dep. 219-220). Plaintiff testified as much in his deposition where he admitted he had no knowledge of whether anyone had replaced him or if anyone had assumed his duties. (Weinrauch Dep. 219, 220). The record shows there is no dispute that one of major functions of the Portfolio Manager position, the OBIEE reporting duties, are no longer performed by anyone at Sherwin-Williams. (Brownsword Dep. 134-135; Bowen Dep. 119-120). There is also testimony that Plaintiff's more ancillary responsibilities were distributed among various employees or departments of Sherwin-Williams. (Brownsword Dep. 135-136; Bowen Dep. 120-121). Accordingly, the Court finds that Plaintiff's position was not replaced.

### c. Plaintiff Was Not Treated Less Favorably Than Someone Younger or Similarly Situated

Where a plaintiff cannot show that he was replaced by a substantially younger employee, he must show that he was treated less favorably than similarly situated younger employees. In his Complaint, Plaintiff alleges he was treated differently by his supervisors as compared to other direct reports because of his age. He specifically identifies one former co-worker, Jeannie Cribley, as being "significantly younger" and being treated "differently and more favorably." (Compl. ECF #1 at 27-30). He also alleges that his managerial roles were transferred to another, significantly younger employee, Ms. Arshnappali. (Compl. ECF #1 at 44-45). Further, he alleges disparate treatment in that he (1) did not receive the training he requested and (2) he did not receive "juicy assignments." (Weinrauch Dep. 92-93; 178). However, Plaintiff presents no evidence to support a finding that these alleged comparators were actually treated differently.

Among his contentions, Plaintiff testified that he received less training than his younger counterparts. (Weinruach Dep. 250-256). Specifically, he alleges that he was denied Information Technology Infrastructure Library ("ITIL") training. (Weinrauch Dep. 250). However, Plaintiff went on to testify that this particular training was not essential as Sherwin-Williams was moving

away from ITIL to a new process called Agile and was unable to provide evidence of any similarly situated employees who did receive ITIL training. (Weinrauch Dep. 250, 254-255). Plaintiff also alleges that Ms. Johnson denied him Business Relationship Management ("BRMP") training but admitted during his deposition that he could not identify an employee who did receive the training. (Weinrauch Dep. 250-251). Further, Plaintiff contends that he was denied salesforce training. However, Plaintiff testified that not only was the training unnecessary, he again admitted that he was unaware of anyone who had received the training, and if they had, he could not speak to the age of anyone he believed to have been treated more favorably than him. (Weinrauch Dep. 225-256).

Among these allegations, Plaintiff provides no evidence that Defendant Kozik played any role in the alleged denial of his training requests and thus fails to demonstrate how Defendants treated any similarly situated employee more favorably with respect to employment training. Plaintiff also contends that he was denied "juicer assignments" over younger employees. This allegation is without merit as when pressed on the issue at deposition, Plaintiff could not even identify one "juicer assignment." (Weinrauch at 178). Again, Plaintiff could not testify to how any assignments or initiatives he proposed where given to other employees, let alone younger employees. (Weinrauch at 182). Absent specific evidence that at least one of these employees is similarly situated and was treated dissimilarly, Plaintiff fails to satisfy his *prima facie* burden. *See Hardy v. Eastman Chemical Co.*, 50 Fed. Appx. 739, 743 (6th Cir. 2002) (affirming summary judgment because the plaintiff failed to come forward with specific (or any) facts that the "comparator" had engaged in the same conduct as the plaintiff).

Finally, as Defendants accurately contend, Plaintiff presents no direct, circumstantial or statistical evidence to show his age played any role, let alone a *but-for* role, in the elimination of

his position during Defendants' workforce reduction. Throughout his testimony, Plaintiff failed to identify any instance where Defendant Kozik or any other individual with decision-making authority played a role in any alleged preference to a younger employee or any instance where he was treated less favorably with regard to work assignments. Of the 5 other people in the IT section who lost their jobs, two were under the age of 40 and 3 were above. Plaintiff was in the middle of the age distribution and not even three years older than Defendant Kozik. (Defendants' Answer to Pltf.'s Rog. No. 23; Weinrauch Dep. 10; Kozik Tr. 6). As Plaintiff has no additional evidence to prove his age was the *but-for* cause for the elimination of his position, Plaintiff's claim fails as a matter of law.

## 2. Pretext for Age Discrimination

If a plaintiff makes out a *prima facie* case, the burden then shifts to the defendant to produce evidence of a non-discriminatory reason for its action, which will necessarily be the alleged reduction in force. *McDonnell Douglas*, 411 U.S. at 802-803. The burden then returns to the plaintiff to demonstrate that the defendant's proffered reason is pretextual. *See Scott*, 160 F.3d at 1126; *McDonnell Douglas*, 411 U.S. at 802-03.

Even assuming Plaintiff has met his *prima facie* burden, which he has not, Mr. Weinrauch fails to prove that Defendants' legitimate, non-discriminatory reason of a reduction in force – which affected many employees of varying ages – was mere pretext for age discrimination. The Sixth Circuit has stated that, "[t]o prevail….a plaintiff must come forward with some evidence to rebut the presumption that the reduction in the workforce is the legitimate reason for her termination." *Jones v. Fluor Fernald, Inc.,* 216 F. App'x 461, 462-63 (6th Cir. 2006).

In order to establish pretext, Mr. Weinrauch would have to prove by a preponderance of the evidence that (1) the proffered reasons had no basis in fact; (2) the proffered reasons did not

actually motivate the discharge, or (3) that they were insufficient to motivate the discharge. *Baker v. Gerenich Realty, Co.,* No. 3:08 CV 36, 2009 WL 414663 at *4 (N.D. Ohio February 19, 2009) (quoting *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1081 (6th Cir. 1994)). To show pretext, an employee may not rely upon her or his *prima facie* evidence, but must, instead, introduce additional evidence of discrimination. *Manzer v. Diamond Shamrock Chems Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994).

The Court finds that Sherwin-Williams explanation of a reduction in force precipitated by a $11.3B merger with Valspar to be credible, rooted in fact, and the reason for Plaintiff's termination. *See Chappell, 803 F.2d at 266; Kesselring v. United Technologies Corp.,* 753 F. Supp. 1359 (S.D. Ohio 1991) (evidence insufficient to establish 66-year-old employee was terminated due to his age rather than a reduction in force as employee's sales region had been eliminated and he was not replaced). The ADEA does not grant authority to judge the wisdom of a corporation's business decisions. *Parcinski v. Outlet Co.,* 673 F.2d 34, 36 (2d Cir. 1982).

Plaintiff fails to meet his burden. He provides no evidence to refute Plaintiff's legitimate, non-discriminatory reason – namely, the reduction in force and the elimination of the Portfolio Manager position – is pretext. He fails to adduce any evidence to show that Defendants' argument has no basis in fact or that the merger did not actually motivate Defendants' decision. Moreover, the record does not contain evidence to support a finding that a reduction in force could not support Defendants' conduct with respect to the elimination of his position. Accordingly, Plaintiff cannot show pretext and his claims for age discrimination under the ADEA and Ohio law fail as a matter of law.

## B. Plaintiff's Retaliation Claims Fail as a Matter of Law

Plaintiff also asserts claims under the ADEA and Ohio law. 29 U.S.C. § 632(d); R.C. § 4112.02(I). Under the ADEA and Ohio law, employers are prohibited from retaliating against an employee for opposing or reporting age discrimination. *Blizzard*, 698 F.3d at 288; citing 29 U.S.C. § 632(d); R.C. § 4112.02(I). Retaliation claims based on circumstantial evidence are analyzed under the *McDonnell Douglas* framework. *Fuhr*, 710 F.3d at 674. To establish a *prima facie* case of retaliation, a plaintiff must show: (1) that he engaged in protected activity; (2) the employer knew he engaged in the protected activity; (3) his employer subsequently took an adverse employment action against him; and (4) the adverse employment action was causally related to the protected activity. *Blackshear v. Interstate Brands Corp.*, No. 10-3696, 2012 WL 3553499, 5 (6th Cir. 2012) (citing *Ladd*, 552 F.3d at 502).

Once a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to "produce evidence of a legitimate, non-discriminatory reason for its actions[.]" *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008). "If the [employer] satisfies the burden, the [employee] must then demonstrate by a preponderance of the evidence that the legitimate reason offered by the defendant was not its true reason, but instead was a pretext designed to mask retaliation." *Id.* A *prima facie* case, coupled with sufficient evidence to find that the employer's proffered reason is false, may permit a trier of fact to conclude that the employer unlawfully retaliated against the employee. *Imwalle*, 515 F.3d 531, at 545. Plaintiff has the ultimate burden of persuasion to show that his protected conduct was the "but-for" cause of his termination. *Montell v. Diversified Clinical Servs.*, Inc., 757 F.3d 497, 504 (6th Cir. 2014) (citation omitted).

Plaintiff contends Defendants retaliated against him for complaining about Ms. Johnson during a meeting with Ms. Bowen-Klek on September 28, 2016. Specifically, Plaintiff's retaliation

claim is premised on two allegedly adverse employment actions: (1) Defendants' decision to transfer Plaintiff to an "undefined" position and (2) Defendants' termination of Plaintiff's employment. (ECF #1, ¶ 94-102; 114-120).[5] Defendants argue Plaintiff fails to set forth a *prima facie* case for retaliation because there is no proof a decision-maker had knowledge of his alleged complaint or nor is there any evidence causally connecting Plaintiff's complaint to the elimination of his position.

### 1. *Prima Face* Case

#### a. Plaintiff's Transfer to Portfolio Manager Does Not Give Rise to a Retaliation Claim

As previously discussed, an adverse employment action is a "materially adverse change in the terms or conditions of employment." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 19967). A plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

For his retaliation claims, Mr. Weinrauch asks the Court to apply a more liberal standard in determining whether his reassignment qualifies as an adverse employment action. He argues that the burden of showing an adverse action is "less onerous in the retaliation context than in the anti-discrimination context." *Michael v. Caterpillar Financial Services Corp.*, 496 F.3d 584 (6th Cir. 2007) see also *Burlington Northern*, 126 S. Ct. 2415 ("the anti-retaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the

---

[5] The ADEA and Ohio anti-retaliation statutes employ the same evidentiary standards and thus the claims may be analyzed together. *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 544 (6th Cir. 2008).

workplace."). This broader standard permits actions "not materially adverse for purposes of an anti-discrimination claim to qualify as such in the retaliation context." *See, e.g. Id.* at 2415-16.

However, as the Court noted in *Burlington*, "reassignment of job duties is not automatically actionable. Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and "should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale*, 523 U.S., at 81 S. Ct. 998, 140 L. Ed. 2d 201; *see also Kocsis, supra*, 97 F.3d at 886 ("[a] change in employment conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities.").

Plaintiff contends his reassignment was actually a "demotion" because of his assignment to an individual contributor position with a "reduction in duties from a managerial position to a position with no job description, no title, and one menial task that Sherwin did not even care to perform for the several months leading up to [his] placement in that position." (Pltf. Brief, ECF #23 at 16). The Sixth Circuit has recognized that "[r]eassignments...can qualify as adverse employment actions, particularly where they are accompanied by salary or work hour changes." *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010).

However, absent from Plaintiff's iteration of the circumstances are a couple of facts crucial to the analysis. First, Plaintiff made a number of requests over the course of his employment to be transferred to another position, including individual contributor positions that did not have any direct reports. (Weinrauch Dep. 127, 138, 140, 167). Second, following his transfer, Plaintiff maintained his manager title, salary of over $110,000 per year (and annual raise), benefits, hours and location. (Weinrauch Dep. 54, 166, 185; Kozik Dep. 84-86; Bowen Dep. 97-98). While Plaintiff's job responsibilities did change, it is difficult to find under the circumstances that a

reasonable employee, who requested and later received a transfer to a position previously sought, while enjoying the same salary and benefits of his previous role, would "feel dissuaded from reporting discrimination" such that the transfer is actionable conduct.

Finally, there is no testimony, beyond Plaintiff's own conjecture, that his new role of "menial work" was "left open because it was not needed." (Pl. Br., ECF #23, at 10). There is no evidence to support a finding that the Portfolio Manager position was a "demotion" or "less distinguished" role. With no evidentiary support, "subjective impressions as to the desirability of one position over another are not relevant to determining whether the employee suffered an adverse employment action." *Momah*, 239 F. App'x at 123. To the contrary, there is evidence that the position had remained open after another employee left Sherwin-Williams several months prior and the work became too much for the remaining team members to handle. (Brownsword Dep. 43-44; Kozik Dep. 85; Bowen Dep. 99-100).

Based on the circumstances present, a reasonable jury could not conclude, even by a more liberal application of the definition of materially adverse action, that Plaintiff's transfer to Portfolio Manager constitutes an adverse employment action. Accordingly, the Court finds Plaintiff suffered one adverse employment action, the elimination of his position, for purposes of his retaliation claims.

### b. Plaintiff Cannot Prove Anyone Other Than HR Manager Bowen-Klek Had Knowledge of His Purported Protected Activity

A *prima facie* case for retaliation requires Plaintiff to establish that Defendants knew of his alleged protected activity. *Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624 (6th Cir. 2009). To satisfy his burden, Plaintiff must come forward with "specific facts" to support his allegation that Defendants had knowledge of the purported complaint. *Anderson*, 477 U.S. at 248.

Plaintiff contends he has introduced sufficient evidence showing Defendant Kozik had knowledge of his protected activity.[6]

On September 18, 2016, Plaintiff requested a meeting with Ms. Bowen-Klek to discuss an allegedly "unprofessional" and "condescending" email from Ms. Johnson. (Weinrauch 118-120; Bowen Dep. 54). The purpose of the meeting was to discuss Ms. Johnson's behavior towards him. In his request for the meeting, Plaintiff forwarded an email from Ms. Johnson, noting that she "chose to attack [him] personally and professionally." (Weinrauch Dep. 120 Ex. K). (Weinrauch Dep. 120). During this meeting, Plaintiff purports to have made a single, verbal complaint of age discrimination. (Weinrauch 129; 205).

Plaintiff claims that Ms. Bowen-Klek "spoke with Kozik about the substance" of her conversation with Plaintiff and that his included his age discrimination complaint. (Pl. Br. at 8). This contention is unsupported by the record. First, Plaintiff testified that he did not know whether anyone other than Ms. Klek was made aware of his complaint, including Defendant Kozik and Ms. Brownsword. (Weinrauch Dep. 270; 139; 174-175 Kozik Dep. 71). Mr. Weinrauch provides no details or specifics as to the substance of the claim or language that Ms. Johnson used. (Weinrauch 129). He never formally reported the complaint to Defendants' problem resolution center or mentioned the complaint to anyone else in Defendants' Human Resources department. (Weinrauch Dep. (Weinrauch Dep. 269). He did not follow-up on his complaint to inquire whether

---

[6] The record contains conflicting evidence as to the existence of Plaintiff's alleged protected activity. Plaintiff testifies that he made a single, verbal complaint of age discrimination against Ms. Johnson during his September 28, 2016 meeting with Ms. Bowen-Klek. (Weinrauch Dep. 129). Ms. Bowen-Klek denies Plaintiff ever made such a complaint to her. (Bowen-Klek Dep. 56). For purposes of summary judgment, the Court construes facts in the light most favorable to the Plaintiff and views Plaintiff's purported complaint as protected activity.

it was being investigated or mention it an email to Ms. Bowen-Klek after their meeting. (Weinrauch 205).

Plaintiff argues, however, that Ms. Bowen-Klek admitted that after her meeting with Plaintiff, she spoke with Defendant Kozik about the substance of their conversation. Plaintiff contends that the note she prepared prior to this meeting reveals not only that Defendant Kozik was informed Plaintiff's protected activity but that it also reveals Defendants discriminatory and retaliatory intent with respect to his transfer and termination. "Specifically, Bowen-Klek made a list of "talking points" to discuss with Kozik, and the very first thing she mentioned was "move now retaliation – move if Chameleon fails." Based on his interpretation of this note, Plaintiff argues "Bowen-Klek informed Kozik that if he took any adverse action against Weinrauch at that time it would be retaliation – so instead, he should wait, for example, for Chameleon to "fail" which would then provide a pretextual reason to reassign or terminate Weinrauch." From the next line of the note, "he is protected," Plaintiff argues this to actually mean that Ms. Bowen-Klek "k[new] that Weinrauch was over 40 and had just complained about discrimination." (Pl. Br. ECF #23, at 7).

Plaintiff's characterization of Ms. Bowen-Klek's note, specifically his allegations that it reveals the substance of her conversation with Defendant Kozik and any retaliatory motive on Defendants behalf, are unpersuasive. At best, the handwritten note concedes a fact already in the record, namely, that Plaintiff is a member of a protected class. Without any other evidence, Plaintiff's contentions as to the note's contents are conclusory.

The record is void of any evidence that Defendant Kozik or any other individual with decision-making authority had knowledge of Plaintiff's protected activity. As a matter of law, "there can be no retaliation where the decision-maker had no knowledge of the protected activity."

*Gallagher v. Zicora, Inc.*, 2013 U.S. Dist. LEXIS 40128, *24 (N.D. Ohio 2013). There is no evidence in the record that Defendant Kozik or any other individual with decision-making authority had knowledge of Plaintiff's protected activity.

### c. Plaintiff Cannot Establish a Causal Connection Between His Protected Activity and the Elimination of His Position

Causation is shown when the evidence is "sufficient to raise the inference that protected activity was the likely reason for the adverse action." *Kurtz v. McHugh*, 423 Fed. Appx. 572, 578 (6th Cir. 2011) (citation omitted). At this stage, Plaintiff must produce "sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had she not filed a discrimination action." *Motley v. Ohio Civil Rights Comm'n*, No. 07AP-923, 2008 Ohio 2306 (10th App. Dist. May 13, 2018). "If the evidence indicates that an employer 'could have made the same employment decision regardless of the employee's participation in the protected activity, the employee cannot prevail." *Motley*, 2008 Ohio 2306 at ¶ 11; *see also Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

Plaintiff must prove that retaliation was the "but for" cause of the adverse action, rather than merely "a motivating factor." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338 (2013). That is, "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer. *Id.* He has no such proof.

The purported protected activity took place on September 28, 2016. (Weinruach Dep. 128). Plaintiff learned that his position was being eliminated over a year later on October 18, 2017. (Weinrauch Dep. 229). There is no evidence on the record connecting these two events. Even more, there is no evidence that Defendant Kozik, the individual with decision-making authority, knew of the protected activity such that he could act on it. (Weinrauch Dep. 270; 139; Kozik Dep.

71). Absent from Plaintiff's testimony is any evidence that Defendants' decision to eliminate the Portfolio Manager role was made in response to Mr. Weinrauch's complaint. Also absent from the record is any evidence whatsoever that age was a factor in Defendant Kozik's determination that the Portfolio Manager role would be eliminated in the reduction in force. Accordingly, the record is void of any proof linking Plaintiff's verbal complaint to the elimination of his position.

Further, given the passage of time, Plaintiff cannot rely on any temporal connection to create an inference of causation for the Court. *See Peterson v. UH Reg'l Hosp.*, 2017 U.S. Dist. LEXIS 32458, at *12 (N.D. Ohio 2012) (where the court held that a "one-year time gap does not create an inference of a causal connection"). The Court agrees Plaintiff fails to prove a causal connection beyond his own subjective belief, admitting as much in deposition. (Weinrauch Dep. at 183-184). However, "a plaintiff's feelings and perceptions of being discriminated against are not evidence of discrimination." *Smith v. Bronx Cmty. Coll. Ass'n*, 2017 U.S. Dist. LEXIS 25632, *5 (S.D.N.Y. 2017).

## 2. Pretext for Retaliation

Plaintiff cannot prove the elements of a *prima facie* case of retaliation. Even if he could, Sherwin-Williams had a legitimate, non-discriminatory reason for eliminating his position in a reduction in force and terminating his employment, which Plaintiff cannot demonstrate to be a pretext for retaliation. For these reasons, Plaintiff's retaliations claims fail as a matter of law.

## C. Plaintiff's Aiding and Abetting Claim Against Defendant Kozik Fails as a Matter of Law

Plaintiff alleges Defendant Kozik "aided and abetted Sherwin-Williams' efforts at "discriminating and retaliating" against him in violation of R.C. § 4112.02(J). (Compl., ECF #1, at ¶ 121-125). Ohio law makes it unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice…" R.C. §

4112.02(J). An individual is liable for aiding and abetting if he "knowingly does something which he ought not to do…which assist or tends in some way to affect the doing of the thing which the law forbids." *Luke v. City of Cleveland*, 2005 U.S. Dist. LEXIS 49630, 2005 WL 2245187 at *8 (N.D. Ohio Aug. 22, 2005).

Plaintiff's cause of action against Defendant Kozik for aiding and abetting fails as a matter of law. Plaintiff contends that Defendant Kozik is an "employer" under R.C. § 4112.02 such that he may be found liable in his personal capacity for aiding and abetting Sherwin-Williams' unlawful conduct. However, Plaintiff has failed to satisfy his *prima facie* burdens for age discrimination and retaliation. Where a court finds that a defendant is entitled to summary judgment on the underlying claims of discrimination and retaliation, the court must also necessarily grant summary judgment on the claim of aiding and abetting those claims. *Pringle v. Richmond Hgts. Sch. Dist.*, 2015 U.S. Dist. LEXIS 146218, *62 (N.D. Ohio 2015). Accordingly, Plaintiff's aiding and abetting claim fails as a matter of law and Defendants are entitled to summary judgment.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF #22) is hereby GRANTED.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
Senior United States District Judge

DATED: _July 10, 2019_____